## A97A1635. STONE v. THE STATE.
### (494 SE2d 48)

SMITH, Judge.

Gary Frederick Stone was indicted by a Cobb County grand jury on charges of trafficking in cocaine, OCGA § 16-13-31 (a) (1), possession of cocaine with intent to distribute, OCGA § 16-13-30 (b), possession of less than one ounce of marijuana, OCGA §§ 16-13-30 (j) (1), 16-13-2 (b), possession of more than one ounce of marijuana, OCGA § 16-13-30 (j) (1), possession of a firearm during commission of a crime, OCGA § 16-11-106 (b) (4), and possession of a firearm by a convicted felon, OCGA § 16-11-131 (b). The trial court directed a verdict on the charge of possession of cocaine with intent to distribute. The jury acquitted Stone of the charge of possession of more than one ounce of marijuana but convicted him of all remaining charges. Stone's motion for a new trial was denied, and he appeals, asserting the general grounds and ineffective assistance of counsel. We affirm.

1. Construed in favor of the jury's verdict, the evidence shows that officers of the Marietta-Cobb-Smyrna narcotics unit received information that a black male named Gary Stone driving a green and gold Astro van would be delivering cocaine to a particular location. The officers set up a surveillance, the van arrived on the scene, and the officers approached it. Another individual, Waller, was driving the van, and Stone was in the rear, along with a quantity of cocaine in plain view. An officer testified that she found a bag containing smaller baggies of suspected cocaine and marijuana in the rear of the van. A loaded .44 revolver was found in a seat pocket within arm's reach of Stone. Stone had $1,558 on his person.

The officers then obtained a search warrant for Stone's residence and found a pot on top of the stove containing a milky substance that, in one officer's experience and knowledge, was used for "cooking crack cocaine." Another officer testified that the rim of the pot was coated with what appeared to be cocaine residue. The officers also found a shoebox containing uncooked rice, which in the witness's experience was used for keeping cocaine dry, and some United States currency. Relying on information received from Waller, the officers then located Stone's girlfriend and obtained her permission to search her apartment. There they found approximately 371 grams of cocaine, 118 grams of marijuana, razor blades, scales, and glass beakers in a cooler in the hall closet, as well as approximately $15,800 in cash in the refrigerator.

(a) In asserting that the trial court erred in denying his motions for directed verdict and for new trial, Stone contends the State "convoluted and mixed" the drugs seized in three separate searches to the point that the chain of custody of the drugs could not be proved. During the testimony of one officer, Stone challenged her to identify the State's exhibits and match them to the appropriate custody records; she was unable to do so.[1] Stone immediately moved for a directed verdict, on the basis that the State was required to establish a chain of custody for all the drugs from arrest to trial. During the colloquy that followed, the prosecutor stated that some of the drugs apparently had been destroyed or combined in a single exhibit. The trial court denied Stone's motion as premature, but cautioned the State that the drugs found on the scene must be "linked up" with the chemical analysis before the State rested its case.

The State offers no assistance on this issue in its appellate brief, merely making the conclusory statement that the State placed into evidence "the entire chain of custody," a statement that is entirely unsupported by citations to the record. A review of the transcript, however, reveals that this assertion is for the most part correct. After the discussion with the court regarding the chain of custody, the State recalled several of the arresting officers. The officer who found the bags in the rear compartment of the van testified that she gave them to an agent in charge of the case. The agent in charge of the case testified that he received the bags from the first officer and prepared a property control form describing the bags and their contents. The agent in charge also testified that he seized other material in plain view in the van; he prepared a second property control form describing this additional material. The agent in charge further testi-

---

[1] But this officer seized only a portion of the material found in the van, and she immediately turned that package over to the agents in charge of the case.

fied that he weighed, packaged, labeled, and sealed all the material in manila envelopes and placed them in a locked drop box.

The agent reviewed the official report from the Division of Forensic Sciences, showing the separate items received in the crime laboratory. While initially unable to account for one manila envelope on the report, the agent after refreshing his memory was able to testify that the envelope contained evidence received the day before the incident for which Stone was on trial. The former evidence officer for the narcotics unit testified that he transported the evidence bags, unopened, from the locked drop box to the crime lab. The forensic chemist at the crime lab testified that she received the evidence bags unopened, undamaged, and unaltered. The material in the bags tested positive for cocaine and marijuana.

With respect to the drugs found in the apartment, another officer identified suspected marijuana and cocaine found inside the cooler in the hall closet. He turned those bags over to the agent in charge of collecting evidence. He identified the property sheet listing the suspected cocaine and marijuana. The agent in charge of the case testified that he prepared the property sheet for these two items, weighed, packaged, sealed, and signed the items, and placed them in the locked drop box at the narcotics office. The former evidence officer testified that he also carried these items to the crime lab, and the forensic chemist received the items sealed and unaltered, and they tested positive for cocaine and marijuana.

At trial, however, the agent in charge of the case was unable to account for one bag of marijuana listed on the official report as found in the vehicle by matching it to the exhibits at trial, and the present evidence officer testified that he inadvertently destroyed some of the marijuana in the Stone case after it was returned from the crime lab.

To show a chain of custody adequate to preserve the identity of fungible evidence, the State has the burden of proving with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not foreclose every possibility of tampering, however, and need only show "reasonable assurance" of the identity of the evidence. *Quinn v. State,* 209 Ga. App. 480, 482 (3) (433 SE2d 592) (1993). The record in this case demonstrates that the chain of custody of the drugs was sufficiently established to support Stone's convictions.

The only item unaccounted for by the combined testimony of all the investigating officers from arrest to courtroom was the larger amount of marijuana which formed the basis for the felony possession of marijuana charge. But neither the lack of precise recollection on the part of a witness nor the destruction of drugs *after* testing by the crime lab is fatal to the chain of custody. See generally, e.g., *Green v. State,* 165 Ga. App. 702 (2) (302 SE2d 604) (1983). The ele-

ments of a drug offense may be proved beyond a reasonable doubt by other evidence even if part or most of the drugs themselves have been destroyed. See, e.g., *Evans v. State*, 176 Ga. App. 818, 822 (2) (338 SE2d 48) (1985) (rational juror could have found that 2,000 pounds of contraband had been discovered when State retained only two pounds); *Lang v. State*, 165 Ga. App. 576, 579 (4) (302 SE2d 683) (1983) (conviction for trafficking in over 100 pounds of marijuana affirmed when State retained only 100 grams). But we do not reach these issues because the jury acquitted Stone of this charge; he therefore cannot complain that the trial court erred in failing to direct a verdict of acquittal. *Columbus v. State*, 200 Ga. App. 81, 82 (2) (406 SE2d 576) (1991).

(b) Stone also asserts a fatal variance between the indictment and the evidence at trial. The indictment alleged that he "did unlawfully, knowingly sell, deliver *and* be in possession of" (emphasis supplied) the drugs. Stone contends that the State was required to prove all three acts as alleged but failed to do so because he was arrested before the sale could be completed. This contention is without merit. If a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form. *Gordon v. State*, 199 Ga. App. 704, 705 (1) (406 SE2d 110) (1991). There was no fatal variance because the evidence was sufficient to show defendant violated the statute prohibiting trafficking in cocaine in at least one of the ways alleged in the indictment.

2. Stone also contends he was denied effective assistance of counsel. He raises three instances of allegedly ineffective representation on the part of several of the numerous attorneys who acted as his counsel before and during trial.[2] Stone complains of his counsels' failure to move to sever the charge of possession of a firearm by a convicted felon, to request a limiting instruction on the prior conviction, or to advise Stone that contesting the State's separate forfeiture proceeding could potentially harm his defense in the criminal trial. But none of the claims raised here was raised in the trial court.

"Defendant through appellate counsel raises a second claim of ineffective assistance of counsel against trial counsel, basing that claim on grounds which are different from those supporting the original claim of ineffective assistance. . . . A defendant has an obliga-

---

[2] Stone fired his first attorney. His second attorney withdrew from representation before trial. His third and fourth attorneys were replaced by a fifth attorney whom Stone retained to represent him at trial. A sixth attorney filed Stone's motion for new trial, and a seventh attorney amended Stone's motion for new trial to allege ineffective assistance of counsel. This seventh lawyer continues to represent Stone on appeal.

tion to raise all allegations of ineffective assistance of counsel at the earliest practicable moment, and any allegation not raised is deemed waived. [Cit.]" (Footnote omitted.) *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993).

Like Hayes, Stone "asserts no error concerning the trial court's ruling on the original claim of ineffective assistance." (Emphasis omitted.) Id. at n. 2. While Stone filed a short amendment to his motion for new trial alleging a wide variety of failures on the part of his pretrial and trial counsel, he failed to include in that motion any claim that counsel failed to request jury instructions, that counsel failed to advise Stone as to the potential effect of his pleadings in a forfeiture proceeding, or that counsel failed to file a motion to sever the firearms charge. The only allegation that could conceivably pertain to any of these claims was his general assertion of "failure to file pretrial motions." And while some testimony was elicited at the hearing on Stone's motion for new trial from his second and his fifth attorney pertaining to the issue of a motion to sever, Stone's counsel did not present any argument asserting the failure to file a motion to sever at the hearing on the motion for new trial. Stone did not file any further amendment to the motion for new trial, and he never filed any brief in support of the motion.

It is well established that an "appellant cannot now raise and request a ruling on a ground of argument that he did not make below. [Cit.]" *Evans v. State*, 191 Ga. App. 364, 365 (2) (381 SE2d 760) (1989). Merely eliciting testimony in the course of a hearing, without raising any argument concerning that testimony in a motion, brief, or argument before the trial court, is insufficient to place the trial court on notice as to what is being asserted and the grounds for the assertion. In this case, the absence of any argument or supporting legal authority for Stone's broad and general motion forced the trial court in effect to guess at Stone's contentions with regard to the alleged instances of ineffective assistance.[3] Because the allegations of ineffectiveness raised by Stone on appeal differ from those raised below, they are deemed waived. *Hayes*, supra. See also *Jones v. State*, 226 Ga. App. 619, 623 (7) (487 SE2d 371) (1997).

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 3, 1997 —
RECONSIDERATION DENIED NOVEMBER 14, 1997 —

*John Matteson*, for appellant.

---

[3] The trial court treated Stone's general allegation with regard to pretrial motions as complaining of failure to file a motion to suppress evidence.

*Thomas J. Charron, District Attorney, Irvan A. Pearlberg, Andrew J. Saliba, Assistant District Attorneys,* for appellee.