A98A2150. SINGLETON v. THE STATE.
A98A2151. McCORMICK v. THE STATE.
(511 SE2d 541)

SMITH, Judge.

Tabitha Singleton and Christopher McCormick were convicted on charges of trafficking in methamphetamines, possession of methamphetamines with intent to distribute, and possession of methamphetamines. Their motions for new trial were denied, and they appeal, contending that the trial court erroneously denied their motions to suppress. We find no reversible error, and we affirm.

The record shows that Officer Mark Tison with the Rome Police Department received information around 4:05 a.m. on July 1, 1997 from a confidential informant. During the two-and-one-half years Tison had worked with the local drug task force, this informant had provided information leading to the issuance of three search warrants and the arrests of approximately five people for violation of the Georgia Controlled Substances Act. Tison learned from the informant that a white male named Chris and an unidentified white female, who were staying in Room 127 of a particular motel, pos-

---

sessed a quantity of methamphetamine and were traveling in a red and silver Mustang with a California tag. The informant provided the tag number of the car and stated that the individuals would be leaving the motel during the early morning hours of July 1 and possibly would be traveling to Virginia or Tennessee.

Tison drove to the motel and found a car matching the description provided by the informant parked "directly in front of Room 127." Tison investigated and learned that the car was registered to a Christopher McCormick. Tison placed the motel parking lot under surveillance and observed the car leave around 7:31 a.m. He followed the car until it stopped at a gas station, where he saw a white male exit it and enter the station, while a white female exited the car and pumped gas. After these individuals re-entered the car and drove away from the gas station, Tison followed the car until it stopped in a grocery store parking lot. Tison walked to the passenger side door, where the man was exiting, identified himself, and obtained McCormick's name and destination. After McCormick refused to give Tison consent to search the car for drugs, Tison conducted a warrantless search of the car. He found a syringe inside a purse, and in the hatchback of the car he found a spoon with some sort of residue on it and several small plastic bags. Inside the console Tison found a large quantity of a substance identified at trial as methamphetamine; one large portion of the substance was wrapped in plastic, while three remaining portions were found inside three plastic bags. McCormick and Singleton were then arrested.

About eight hours later, at Tison's request, a canine search was conducted. Officer Richard Penson testified that the dog alerted on both doors of the car, the console area, and a purse located inside the car. Penson's search of the purse revealed a daily planner containing a potentially incriminating entry.

1. Appellants first contend that the evidence seized after the warrantless search was inadmissible because probable cause to stop and search the vehicle did not exist. We do not agree. "Where the details of a tip are corroborated by the personal observation of the investigating officers, a reliable informant's tip is sufficient to establish probable cause for a warrantless search. [Cit.]" *DuPree v. State*, 232 Ga. App. 573, 574 (502 SE2d 511) (1998). Here, the confidential informant was shown to be reliable, as Tison had received information over a two-and-one-half year period from the informant culminating in arrests. See generally *Britt v. State*, 208 Ga. App. 157 (430 SE2d 28) (1993) (informant reliable because informant had previously supplied agent with information leading to arrests and seizure of contraband). And this detailed information, which included a prediction of appellants' future behavior, was independently corroborated by Tison. Probable cause for the stop of McCormick's vehicle

therefore existed. See *DuPree*, supra.

The passage of approximately three hours from the time Tison received the informant's tip until he effectuated the stop does not demand a conclusion that a warrant was required. The informant stated that the individuals would leave early in the morning of July 1. It was therefore reasonable, as testified to by Tison, to believe that he did not have time to leave the scene he had placed under surveillance to obtain a search warrant.[1] Once the car began moving, obtaining a warrant would have been impractical, and exigent circumstances justifying a warrantless search were therefore created. See generally *Hall v. State*, 176 Ga. App. 428, 429-431 (2) (336 SE2d 291) (1985). Given the well-settled rule that a trial court's ruling on a motion to suppress will not be disturbed if supported by any evidence, *Johnson v. State*, 230 Ga. App. 535, 536 (1) (496 SE2d 785) (1998), as well as the totality of the circumstances present here, we find no error in the trial court's denial of appellants' motion to suppress evidence of the contraband discovered as a result of the warrantless search. Moreover, the search revealing the date book was not tainted because it occurred several hours after the initial stop. "Police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. The probable cause factor that developed at the scene still obtained at the station house." (Citation and punctuation omitted.) *Richardson v. State*, 232 Ga. App. 398, 402 (501 SE2d 885) (1998).

We note that Tison testified during the hearing on the motions to suppress that he believed he had probable cause to enter appellants' motel room. His failure to do so, however, did not negate the validity of the subsequent search of the automobile. The trial judge concluded that probable cause to search the motel room did *not* exist and that Tison "used the better part of discretion" in waiting until appellants left the motel and assuring himself that the occupants of the car described by the informant were indeed a male and female. As noted by the trial judge, Tison "waited until he could verify as much information given by the informant as he could. In various stages of his surveillance of the car, he identified the . . . type of car that the informant [described]. He verified the tag number given to him. He did verify the motel and the motel room. He did verify, as the situation went on, that the car was leaving, while not in an extremely early morning hour, in the morning hours. He did verify that there was a white male and a white female. He did verify, by a tag check,

---

[1] We also note Tison's testimony that no other task force officers were on duty during the time he placed the motel under surveillance.

that it . . . belonged to a Christopher McCormick." We cannot say that the delay from the time Tison first observed McCormick's car in the motel parking lot until the car stopped some three hours later, occasioned by Tison's decision to obtain more evidence to support a stop of the vehicle, was unreasonable. In fact, under the circumstances of this case, our law supports Tison's action of verifying as much information given by the informant as possible. See *Hall*, supra at 431 (2) (police permitted to "wait and delay search and seizure in hope of increasing the quantum of evidence which they could present to the magistrate to obtain a warrant. [Cit.]").

2. Appellants also contend that statements made by McCormick were induced by promises of leniency and should have been suppressed.

Evidence presented during the *Jackson-Denno* hearing showed that after he was arrested, McCormick stated that someone must have broken into his car and placed the drugs inside. McCormick later stated, however, that "he had been fronted the drugs in Decatur, Alabama, from a Hispanic male named Mario and a white male named Howard. He had been fronted two ounces of methamphetamine and . . . was supposed to return . . . to repay $2,000 for the drugs . . . and then he would be fronted more drugs." Although disputed by McCormick, Tison testified that he read McCormick his *Miranda* rights before these statements were made and that the statements were made freely and voluntarily, without coercion. Furthermore, according to Tison, McCormick never requested an attorney, did not appear to be under the influence of alcohol or drugs, and did not indicate that he wished to remain silent.

The record does show, as argued by appellants, that they were promised leniency if McCormick cooperated with authorities by taking them to the individuals who supplied the drugs. But evidence was also presented that any such promises were made *after* McCormick made the statements he now claims should have been suppressed. Accordingly, appellants' claim that McCormick's statements were induced by these promises fails. "The trial court's findings as to factual determinations and credibility relating to the admissibility of statements will be upheld on appeal unless they are clearly erroneous." (Citations and punctuation omitted.) *Swinney v. State*, 217 Ga. App. 657, 659 (3) (458 SE2d 686) (1995). Because the trial court's conclusion that McCormick's statements were freely and voluntarily given is supported by the evidence, we find no error in their admission.

3. Despite appellants' failure to argue their enumerations concerning the sufficiency of the evidence, we have reviewed the evidence and find it sufficient to authorize a rational trier of fact to convict them of the crimes charged under the standard of *Jackson v.*

*Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
*Judgment affirmed. Johnson, C. J., and Barnes, J., concur.*

DECIDED JANUARY 27, 1999 —
RECONSIDERATION DENIED FEBRUARY 12, 1999.

*James C. Wyatt*, for appellant (case no. A98A2150).
*Floyd H. Farless*, for appellant (case no. A98A2151).
*Tambra P. Colston, District Attorney, Fred R. Simpson, Assistant District Attorney*, for appellee.