A99A0304. CRONAN v. THE STATE.
(511 SE2d 899)

ELDRIDGE, Judge.

A Forsyth County jury found Jonathan E. Cronan guilty on all five counts contained in the indictment against him, i.e., Count 1, first degree vehicular homicide — driving under the influence of marijuana; Count 2, first degree vehicular homicide — speeding and following too closely; Count 3, DUI — driving under the influence of

marijuana; Count 4, reckless driving; and Count 5, possession of marijuana — less than an ounce. Counts 2 through 5 were merged into Count 1 for sentencing purposes. Cronan appeals, alleging five errors of law. We affirm his conviction.

At approximately 10:20 a.m. on February 1, 1995, 19-year-old Cronan was driving a light truck westbound on Georgia Highway 20 near Hyde Road in Forsyth County. Cronan was traveling in excess of the posted 55-mph speed limit. In front of Cronan, Robert Green slowed his Buick to turn onto Hyde Road. Cronan rear-ended the Buick, pushing it into the eastbound lane. The Buick was struck head-on by a tractor-trailer truck traveling eastbound. The police were called to the scene. Cronan informed the lead officer that "he took his eyes of the road for a split second to look at his brother's house," and he hit Green.

Cronan and Green were transported to the hospital. Because of the seriousness of the accident, the lead officer explained to Cronan that a chemical test of his blood and/or urine was required. Cronan sua sponte volunteered that he had smoked marijuana earlier that morning. Implied consent warnings were administered, as well as *Miranda*[1] warnings. The urine sample obtained from Cronan tested positive for the presence of marijuana. Robert Green lost his life. *Held*:

1. In his first enumeration of error, Cronan contends that there was a fatal variance between the allegata of Count 5 of the indictment, i.e., misdemeanor possession of marijuana, and the probata introduced thereon at trial. Cronan contends that while Count 5 specifically alleged he was in possession of *marijuana*, the probata showed only the presence of tetrahydrocannabinol ("THC"). Cronan maintains that evidence of the presence of THC cannot sustain a conviction for misdemeanor possession of *marijuana*, because THC is specifically excluded from the statutory definition of "marijuana." We find that, up to a point, Cronan's argument is well taken.

In this case, the expert from the Georgia Bureau of Investigation crime laboratory testified that Cronan's urine sample tested "positive" for the presence of marijuana. However, on cross-examination, the expert testified that Cronan's urine sample contained the substance THC, without "the morphological[, i.e., physical,] characteristics of marijuana." The expert testified that she formed her opinion that Cronan's urine sample was "positive" for marijuana because THC is a derivative of marijuana.

(a) The Controlled Substances Act under which Cronan was indicted, OCGA § 16-13-1 et seq., states in pertinent part that

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

" 'Marijuana' means all parts of the plant of the genus Cannabis . . . and every . . . derivative, . . . *but shall not* include samples as described in subparagraph (P) of paragraph (3) of Code Section 16-13-25." (Emphasis supplied.) OCGA § 16-13-21 (16). A review of the referenced Code section, OCGA § 16-13-25 (3) (P), shows that the *excluded* samples include, inter alia, "[a]ny material . . . which contains any quantity of . . . [t]etrahydrocannabinols which shall include . . . [a]ll synthetic or naturally produced tetrahydrocannabinol samples which do not contain plant material exhibiting the external morphological features of the plant cannabis."

Essentially, what this means is that a prosecution under the Controlled Substances Act for misdemeanor *possession* of marijuana cannot be instituted *on the basis of a blood or urine test* which shows "positive" for marijuana, because such positive showings will be based upon the presence of THC "without the morphological features" of the marijuana plant and are thus excluded from the definition of "marijuana" under the Act. Accordingly, it would appear that such prosecutions for *possession* of marijuana *based upon positive blood or urine samples* must be brought as felony prosecutions for possession of a Schedule I drug, i.e., THC, pursuant to OCGA § 16-13-30 (c). See also *Osborn v. State*, 161 Ga. App. 132, 134-135 (2) (291 SE2d 22) (1982) (under the Controlled Substances Act, "marijuana shall be considered marijuana unless it . . . does not exhibit the external morphological features of the plant cannabis"). Questionable is the wisdom of restraining the State's discretion to bring either a misdemeanor or felony prosecution based upon such evidence.

(b) However, while Cronan's point has merit, it does not control under the facts of this case. Cronan was not indicted for possession of the marijuana discovered through an analysis of his urine sample. Here, the indictment alleged that "on the 1st day of February, 1995, [Cronan] did unlawfully then and there possess marijuana, in an amount less than one ounce." Accordingly, Cronan's statement to the police that he smoked, and thus possessed, marijuana on the morning of February 1, 1995, admitted the essential elements of the offense as contained in the indictment. Testimony that Cronan's urine sample was positive for THC and that THC is a derivative of marijuana served to corroborate Cronan's admission of possession. There was no fatal variance between the allegata and probata of Count 5.

2. In his second and third enumerations of error, Cronan claims a fatal variance existed between the allegata and probata of both Count 1, first degree vehicular homicide — driving under the influence of marijuana; and Count 3, DUI — driving under the influence of marijuana. As to these counts, Cronan alleges that the "allegata of marijuana" was proved only by the "probata of THC," and thus the

statutory definition of marijuana pursuant to OCGA § 16-13-21 (16) precluded conviction.

This issue is controlled adversely to Cronan under Division 1 herein. However, there is another reason why Cronan's argument fails.

The definition of marijuana contained in OCGA § 16-13-21 (16) applies to those offenses found in the Controlled Substances Act, OCGA § 16-13-1 et seq. The offenses contained in both Counts 1 and 3 were not indicted under the Controlled Substances Act, but were indicted under Title 40 of the Official Code of Georgia, Motor Vehicles & Traffic ("Motor Vehicles Act"). OCGA §§ 40-6-393; 40-6-391 (a) (6).

In that regard, the definition of "marijuana" under the Motor Vehicles Act is "any amount of marijuana . . ., as defined in Code Section 16-13-21, present in the person's blood or urine . . . *including the metabolites and derivatives.*" (Emphasis supplied.) OCGA § 40-6-391 (a) (6). Accordingly, such definition under the Motor Vehicles Act includes THC in the definition of "marijuana" for purposes of determining whether one is driving under the influence thereof. Indeed, since THC in the blood or urine is the method by which the presence of marijuana is detected for purposes of determining whether one is driving under the influence thereof, THC must be considered "marijuana" in order for OCGA § 40-6-391 (a) (6) to even be actionable. Obviously, the "morphological features" of the plant, itself, will never be present in the blood or urine. "It is the duty of the court to consider the results and consequences of any proposed [statutory] construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (Citations and punctuation omitted.) *Proo v. State*, 192 Ga. App. 169, 170 (384 SE2d 197) (1989).

3. Count 4 of the indictment charged Cronan with reckless driving, alleging that such offense was committed by speeding, *and* following too closely, *and* failing to keep a proper lookout. In his fourth enumeration of error, Cronan claims as error the trial court's charge to the jury that "[i]f you should find and believe beyond a reasonable doubt that the accused committed the offense of reckless driving based upon one, all three or any combination of speeding, failure to keep a proper lookout, or following too closely, you would be authorized to find the Defendant guilty." We find no error.

"When an indictment charges a crime was committed in more than one way, proof that it was committed in one of the separate ways or methods alleged in the indictment makes a prima facie case for jury determination as to guilt or innocence." (Citations and punctuation omitted.) *Rucker v. State*, 177 Ga. App. 779, 781 (3) (341 SE2d 228) (1986). It is sufficient for the State to show that a crime was committed in any one of the separate ways listed in the indict-

ment, even if the indictment uses the conjunctive rather than disjunctive form. *Stone v. State*, 229 Ga. App. 367, 370 (494 SE2d 48) (1997). There was no error in the charge.

4. In enumeration of error 5, Cronan alleges that the trial court erred in permitting victim impact testimony during the sentencing hearing because the State failed to file a notice in aggravation of sentence pursuant to OCGA § 17-10-2 (a). Again, we find no error. Oral victim impact testimony is not controlled by the notice provision of OCGA § 17-10-2 (a) and is not the type of evidence "in aggravation of sentence" contemplated by that statute, e.g., "any prior criminal convictions and pleas of guilty or nolo contendere of the defendant." OCGA § 17-10-2 (a). Instead, the introduction of oral victim impact testimony is controlled by OCGA § 17-10-1.2, and the introduction of such evidence is solely within the discretion of the trial court. Cronan has neither alleged nor shown an abuse of such discretion.

5. Relying upon this Court's holdings in *State v. Burton*, 230 Ga. App. 753 (498 SE2d 121) (1998), and *State v. Jewell*, 228 Ga. App. 825 (492 SE2d 706) (1997), Cronan contends that, under the language of the implied consent warnings, he consented to give a urine sample *only* for the purpose of determining whether he was "under the influence" of drugs or alcohol. Thus, Cronan contends that such sample was used improperly to obtain his conviction for: (a) *possession* of marijuana, and (b) first degree vehicular homicide and driving under the influence as indicted. Under the facts of this case, we disagree.

(a) We have held that the results of a suspect's blood or urine test obtained pursuant to the language of the implied consent warnings, OCGA § 40-5-67.1 (b) (2), cannot be used *as the basis* for a possession charge, since, under the language of the warnings, the suspect consented to such tests only for the purpose of determining whether he was *under the influence* of drugs or alcohol, and thus the use of the tests for any purpose other than showing "under the influence" exceeds the scope of the consent given. *State v. Frazier*, 229 Ga. App. 344, 345 (494 SE2d 36) (1997). Because a suspect was "not apprised that he was consenting to provide the State with its *sole* evidence against him supporting a charge of possession of cocaine, but was instead led to believe that he was consenting only to provide information for determining if he was under the influence, . . . consent cannot be considered to be the product of an essentially free and unrestrained choice." (Citation and punctuation omitted; emphasis supplied.) Id.

(b) In *State v. Burton*, supra, and *State v. Jewell*, supra, the prosecution for possession was based on test results that were consensually obtained under the implied consent notice only for the purpose of showing whether a defendant was "under the influence." Because the test results were the *sole* evidence of possession, such results were

*necessarily* the *basis* for the possession charge. Thus, this Court could clearly determine that the prosecution introduced the results for a purpose outside the limited scope for which consent was given, i.e., to improperly show "possession," rather than "under the influence."

Here, however, the result of Cronan's urine test was not the sole evidence of possession, and thus was not necessarily the *basis* of the prosecution therefor. Here, there was *independent* evidence of possession, i.e., Cronan's admission thereto. Thus, unlike the cases upon which he relies, the result of Cronan's urine test was admissible to show Cronan was "under the influence," which in turn served to corroborate the *independent* evidence of possession. Accordingly, such purpose did not exceed the scope of the consent given pursuant to the implied consent notice.

(c) Cronan contends that the averments in Counts 1 and 3 of the indictment stating that marijuana was present in his urine alleged "the possessory form of DUI rather than an 'under the influence' form of DUI." Thus, he contends that his urine sample, obtained only for the purpose of determining whether he was "under the influence," was improperly admitted as to these crimes of "possessory DUI." This contention is meritless. The counts about which Cronan complains charged him specifically with driving under the influence of marijuana pursuant to OCGA § 40-6-391 (a) (6) *because* marijuana was present in his urine. See also OCGA § 40-6-393 (a), referencing OCGA § 40-6-391 (a). This is not a "possessory" form of DUI so as to make applicable the holdings of *State v. Burton*, supra, and *State v. Jewell*, supra.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 9, 1999.

*Banks, Stubbs & Neville, Rafe Banks III*, for appellant.
*Philip C. Smith, District Attorney*, for appellee.