## A00A2174. MEADOWS v. THE STATE.
### (545 SE2d 76)

POPE, Presiding Judge.

Reuben Meadows was convicted of possession of cocaine and marijuana. He appeals, and for the following reasons, we affirm the court's denial of his motion to suppress and the conviction for possession of cocaine. Nevertheless, we agree with Meadows that the evidence was insufficient to convict him of possession of marijuana, and we reverse that conviction.

The record shows that on May 7, 1999, at about 1:30 p.m. Officer Randle-Ervin of the Georgia Bureau of Investigation received a phone call from a reliable confidential informant. The informant told Randle-Ervin that Meadows was transporting cocaine to Cusseta from Columbus. The informant conveyed that the vehicle was mobile. The informant named Meadows, specifically described the vehicle he would be operating, identified the passenger who would be accompanying Meadows and identified the route he would be taking.

Randle-Ervin testified that the informant was reliable and that during the previous eight months this informant had supplied the police with four to five contacts, two of which led to arrests. In the instances in which the informant gave information which did not lead to an arrest, Randle-Ervin testified that the information had been confirmed as true. Randle-Ervin said that the informant had first-hand knowledge of Meadows' activities. Randle-Ervin testified that the informant was providing information because he was charged with drug offenses in another investigation. Upon receiving the phone call, at about 2:30 p.m. Randle-Ervin, another agent and deputies from the Chattahoochee County Sheriff's Department established surveillance on Highway 520. Several of the officers were familiar with Meadows, his passenger and the vehicle he was driving.

About 45 minutes later, at 3:15 p.m., the officers saw the vehicle being driven by Meadows. The car was traveling in the direction described by the informant, accompanied by the woman who had been identified by the informant. The agents stopped Meadows. Randle-Ervin admitted that the sole reason she stopped Meadows was the information from the informant. Although the informant reported that there would be two people in the car, there were actually three people in the vehicle.

Officer Gordy had Meadows step out of the vehicle. Randle-Ervin recalled that Meadows was not completely cooperative with Gordy. Then Gordy patted down Meadows, looking for both weapons and drugs. Gordy reached in Meadows' front pocket and removed a small plastic bag, which appeared to contain cocaine residue. Meadows was placed under arrest and taken to the police station where he was

read his rights and signed a form waiving his rights. Meadows then consented to a search of his residence.

The officers searched Meadows' home and found numerous small plastic baggies in the bedroom. Under the outside porch of the home, the officers found a plastic bag that contained a partially smoked marijuana cigarette. Randle-Ervin testified that when the search was executed an older gentleman was present at the residence. There was also evidence that other people, including Meadows' mother, lived at the residence with Meadows. Meadows referred to the residence as "his mother's residence."

Meadows then gave a statement in which he stated that he was "a drug dealer and that he considered himself a hustler and that he only sold drugs to make a living." Meadows also stated that he would have had much more cocaine if the agents had waited until 6:30 p.m. to arrest him. Meadows also explained that there were no drugs in the house because he kept all drugs outside in the bushes. Meadows disavowed these statements at trial. With respect to the marijuana, in his statement Meadows said that although he did smoke marijuana, several other people at the house also smoked it and that sometimes they just threw the baggies underneath the porch. At trial Meadows admitted that he had told Randle-Ervin that he and members of his household smoked marijuana outside. He denied that he would have thrown the baggies under the porch.

1. In his first enumeration of error, Meadows claims that the trial court erred in denying his motion in limine regarding the warrantless search of his person. He argues that Officer Gordy's search exceeded that allowed under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), and that therefore his motion should have been granted.

Although we agree that Officer Gordy's search may have exceeded that allowed under *Terry*, see *Corley v. State*, 236 Ga. App. 302, 304 (1) (a) (512 SE2d 41) (1999), the search in this case was justified by the existence of probable cause. In other words, the officers were not conducting a *Terry* search; they were conducting a warrantless search which was justified by exigent circumstances and probable cause.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be dis-

turbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation omitted.) *Edgerton v. State*, 237 Ga. App. 786, 787 (516 SE2d 830) (1999).

"One of the exigent circumstances justifying a warrantless search is where there is a seizure and search of a moving vehicle based upon probable cause." (Citations and punctuation omitted.) *Archer v. State*, 217 Ga. App. 395, 396 (457 SE2d 679) (1995).

Given the evidence that the officers received the tip regarding Meadows at 1:30 p.m., set up surveillance on the route at 2:30 p.m. and apprehended Meadows at 3:15 p.m., it was reasonable to believe, as Randle-Ervin testified, that there was no time to obtain a search warrant. *Singleton v. State*, 236 Ga. App. 438, 440 (1) (511 SE2d 541) (1999).

Whether a search is sought to be justified as incident to an arrest for possession of cocaine or whether it is sought to be justified by exigent circumstances, it cannot be upheld unless probable cause existed for a belief that the suspect was currently in unlawful possession of cocaine. . . . The sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

(Citations and punctuation omitted.) *Polke v. State*, 203 Ga. App. 306-307 (1) (417 SE2d 22) (1992).

Here, Officer Randle-Ervin testified that the confidential informant had provided information in five different contexts, over an eight-month period, which had proven true. She also testified that in two of these instances, information from this informant had led to arrests. The testimony demonstrated the informant's veracity and reliability. Furthermore, the tip was corroborated in several respects by the officers: Meadows and his identified passenger were traveling in the described car via the route the informant described at the time the informant had predicted that the car would be traveling. Finally,

Randle-Ervin's recollection that Meadows was uncooperative in getting out of his car further indicated that the information from the informant was correct.

"Where the details of a tip are corroborated by the personal observation of the investigating officers, a reliable informant's tip is sufficient to establish probable cause for a warrantless search." (Citation and punctuation omitted.) *Singleton v. State*, 236 Ga. App. at 439 (1). Although there was little evidence as to the basis of the informant's knowledge, "any deficiency in the basis of the informant's knowledge was adequately compensated by the informant's previous record of reliability." *Britt v. State*, 208 Ga. App. 157, 158 (430 SE2d 28) (1993). Moreover, the informant's tip was corroborated in some respects by the police officers. Probable cause for the stop of the vehicle existed. See *Singleton*, 236 Ga. App. at 439-440. We find no error in the court's denial of the motion to suppress.

2. Meadows claims that the trial court erred in denying his motion for directed verdict and judgment notwithstanding the verdict as to the misdemeanor marijuana charge. He claims that because the portion of marijuana was found under the porch of his residence and other people had access to this area, the evidence was insufficient to convict. We agree and reverse the conviction for possession of marijuana.

Although Meadows admitted that he had smoked marijuana and admitted that he, along with others, had thrown bags down which ended up under the porch, there was no evidence directly linking the marijuana which was found under the porch to Meadows. This situation differs from that in *Cronan v. State*, 236 Ga. App. 374 (1) (b) (511 SE2d 899) (1999), where the defendant admitted having smoked marijuana on the morning of the date set out in the indictment. In contrast, in this case, Meadows made a general statement that he "had smoked" marijuana. He did not specify a date on which he had smoked the substance.

The evidence showed that the house was inhabited by several residents, including Meadows' mother. The evidence showed that various people, including Meadows, smoked marijuana on the porch and threw the bags under the porch. Nevertheless, there was absolutely no evidence that Meadows had ever controlled or possessed the marijuana which the officers found under the porch.

Merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it *affirmatively* appears from the evidence that persons other than the defendant had equal opportunity to commit the crime. For the equal access rule to rebut the inference of defendant's possession of contraband, affirmative evidence

must be presented that a person other than the defendant had equal access to the premises where the contraband was found.

(Citation and punctuation omitted; emphasis in original.) *Mathis v. State*, 204 Ga. App. 896, 897-898 (1) (420 SE2d 788) (1992). In this case, the evidence affirmatively showed that people other than Meadows could have possessed the marijuana under the porch, and there was no evidence which showed that Meadows directly or indirectly possessed this marijuana. See *Stevens v. State*, 245 Ga. App. 237, 238-239 (1) (537 SE2d 688) (2000). Accordingly, the court erred in denying his motion for a directed verdict of acquittal on this charge.

*Judgment affirmed in part and reversed in part. Miller and Mikell, JJ., concur.*

DECIDED JANUARY 23, 2001.

*Peter B. Hoffman,* for appellant.
*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney,* for appellee.