A06A1303. GENTRY v. THE STATE.
(635 SE2d 782)

MIKELL, Judge.

Jason Scott Gentry was convicted of manufacturing methamphetamine (Count 1) and of possession of marijuana (Count 2), following a jury trial, and was sentenced to seventeen years, seven to serve and ten on probation, for Count 1 and twelve months for Count 2, to serve concurrent with Count 1. Appellant's motion for an out-of-time appeal having been granted, he appeals from the denial of his amended motion for a new trial, enumerating as error (1) the trial court's failure to dismiss Count 1; and (2) that the evidence was insufficient to support the convictions on either count. We affirm his conviction under Count 1 and reverse his conviction under Count 2, for the reasons set forth below.

On April 29, 2003, deputies with the Whitfield County Sheriff's Office first investigated and then searched pursuant to a warrant a suspected methamphetamine laboratory operating out of an apartment leased to appellant and Dawn Venable. Evidence of an ongoing methamphetamine laboratory was found, and appellant, who was not present when the apartment was searched, was later arrested.

1. In appellant's first enumeration of error, he asserts that Count 1 of the special presentment was ex post facto, and therefore should have been dismissed by the trial court. We disagree.

(a) Count 1 of the special presentment, filed October 28, 2004, and captioned "TRAFFICKING IN METHAMPHETAMINE," charges that the appellant "did knowingly manufacture a mixture containing Methamphetamine contrary to the laws of [Georgia]." Both appellant and appellee, in their briefs, appear to assume that this language reflects OCGA § 16-13-31 (f) (1), a section which became effective on May 15, 2003, two weeks *after* appellant's offense on April 29, 2003.[1] Appellee maintains that the trial court did not err because appellant's conviction was for a lesser included offense. If appellant were indicted under a statute which had not yet become effective, then his indictment would be invalid,[2] and a conviction on a lesser included offense would be similarly flawed as ex post facto. This is not the case presented before us here, however.

(b) The body of Count 1 of the special presentment charges that appellant "did knowingly manufacture a mixture containing Methamphetamine." At the time of the offense, the "manufacture" of methamphetamine was forbidden by subsection (b) of OCGA § 16-13-30, which provided that "it is unlawful for any person to manufacture . . . any controlled substance," and methamphetamine is a "controlled substance" within the meaning of this Code section.[3] Thus, the body of Count 1 of the presentment is an accurate statement of the law in effect at the time of appellant's offense.

Although the heading of Count 1 of the special presentment, "TRAFFICKING IN METHAMPHETAMINE," was poorly worded, this language did not seriously mislead or hinder appellant's defense. This language is merely surplusage, and, as this court found in *Eidson v. State*,[4]

> [m]ere surplusage will not vitiate an indictment, and need not be established in proof. The material facts which constitute the offense charged must be stated and they must be proved in evidence. But allegations not essential to such purpose, which might be entirely omitted without affecting

---

[1] Ga. L. 2003, p. 177, § 4.

[2] *Christopher v. State*, 190 Ga. App. 393, 394-395 (2) (379 SE2d 205) (1989) (conviction for trafficking in cocaine reversed where jury instruction based on ex post facto amendment to law). See also *Kelly v. State*, 193 Ga. App. 549, 550 (2) (388 SE2d 377) (1989) (even though indictment alleged a crime under the statute as amended and effective after the crime was committed, conviction was affirmed where current law was followed in proof presented at trial).

[3] OCGA §§ 16-13-21 (4) and 16-13-26 (3) (B) (a "controlled substance" includes "[a]ny substance which contains any quantity of methamphetamine").

[4] 262 Ga. App. 664 (586 SE2d 362) (2003).

the charge and without detriment to the indictment, are considered as mere surplusage, and may be disregarded in evidence.[5]

In *Eidson*, the indictment charged Eidson with "Aggravated Assault to Child (OCGA § 16-5-21)," even though the family violence provision of the aggravated assault statute was not signed into law until after Eidson's indictment and guilty plea. This court found that the words "to Child" in the indictment were mere surplusage and were not essential to proving the crime of aggravated assault, and that "the challenged portion of the indictment did not specify the manner in which the crime was done so as to require its proof."[6] Similarly, in the case here before this court, the caption "TRAFFICKING IN METHAMPHETAMINE" is mere surplusage, is not essential to proving the crime alleged in the body of Count 1, and does not specify the manner in which the crime was done so as to require its proof.

(c) Appellant also contends in his first enumeration of error that the trial court erred in allowing Count 1 to proceed to the jury under OCGA § 16-13-30 (b).[7] The trial court dismissed the charge under OCGA § 16-13-31 and stated in open court that "the jury may consider whether or not the State has proven beyond a reasonable doubt that the Defendant violated Code Section 16-13-30 (b), manufacture of methamphetamine, which would have been the applicable statute prior to May 15th, 2003."

Turning to OCGA § 16-13-30 (b), the question becomes: Does the language of Count 1 of the special presentment track the language of OCGA § 16-13-30 (b) closely enough to allow a conviction under this Code section to stand? OCGA § 16-13-30 (b) provides that "it is unlawful for any person to manufacture . . . any controlled substance," and methamphetamine is a "controlled substance" within the meaning of this Code section.[8] Despite the poor wording of the caption of Count 1, the body of the count clearly charges appellant with manufacturing methamphetamine. We fail to see how this presentment could be invalid under existing case law.

In *State v. Eubanks*,[9] our Supreme Court ruled

---

[5] (Citation omitted.) Id. at 664-665 (1).

[6] Id. at 665 (1). Accord *State v. Barnett*, 268 Ga. App. 900, 901 (1) (602 SE2d 899) (2004) (the parenthetical phrase "family violence" in the title of an indictment for aggravated assault was mere surplusage, which did not vitiate an otherwise sufficient indictment).

[7] See text at n. 8, infra.

[8] OCGA §§ 16-13-21 (4) and 16-13-26 (3) (B) (a "controlled substance" includes "[a]ny substance which contains any quantity of methamphetamine").

[9] 239 Ga. 483 (238 SE2d 38) (1977).

that an inconsistency between the denomination and the allegations in the indictment is an imperfection, but is one that is subject to a harmless error test on appeal; and that a defendant who was not at all misled to his prejudice by any imperfection in the indictment cannot obtain reversal of his conviction on this ground.[10]

The indictment in *Eubanks* named the crime of which Eubanks was charged "theft by deception"; however, the body of the indictment alleged acts which constituted theft by conversion, rather than theft by deception.[11] The Supreme Court affirmed the conviction for theft by conversion, stating that

> [i]t is immaterial what the offense is called, if the averments of the presentment are such as to describe an offense against the laws of the state. It is not the name given to the bill which characterizes it, but the description in the averments of the indictment. . . . It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy.[12]

Therefore, the test for validity of an indictment is twofold: first, the indictment must not mislead the defendant, so that he is unable to prepare a defense; and second, the indictment must protect the defendant from double jeopardy. The presentment here before the court contains two critical words: "manufacture" and "methamphetamine." We note that the trial judge accurately tracked OCGA § 16-13-30 in his charge to the jury. Appellant has failed to show how he was misled to his harm by this presentment, nor does it expose him to double jeopardy.

2. Appellant's second enumeration of error asserts that the evidence was insufficient to support a conviction under either count of the indictment.

---

[10] Id. at 484. Accord *Frost v. State*, 269 Ga. App. 54, 56-57 (2) (603 SE2d 481) (2004) (indictment alleging unlawful *receipt* of a check rather than unlawful *taking* of a check withstood challenge; indictment need not quote literally the exact language of the statute allegedly violated); *Bradford v. State*, 266 Ga. App. 198, 199, 200 (1) (596 SE2d 715) (2004) (indictment charging theft by taking held sufficient where defendants "could not admit the charges made and still be innocent" and where "each count of the indictment contains the elements of the charged offense"); *Bostic v. State*, 173 Ga. App. 494 (1) (326 SE2d 849) (1985) (indictment for sale of cocaine held sufficient; indictment need not specify the crime allegedly committed by name or Code section).

[11] *Eubanks*, supra.

[12] (Citations and punctuation omitted.) Id. at 484-485.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[13]

Viewed in this light, the following evidence was presented at trial. Detective Raymond Grossman, a detective with the Whitfield County Sheriff's Office and a senior drug investigator with years of experience and training in this field, testified at trial as an expert in the detection and investigation of methamphetamine laboratories. Detective Grossman testified that, on April 29, 2003, he responded to a complaint of a suspected methamphetamine laboratory in operation at 438 Lafayette Highway,[14] Apartment #6. Upon arrival at Apartment #6, Detective Grossman found outside the apartment items "characteristic to meth labs," including chemical containers, tubing, and hoses; he also smelled a chemical odor which he associated with methamphetamine laboratories. Upon a subsequent search of the apartment pursuant to a search warrant, investigators found chemicals and supplies associated with the manufacture of methamphetamine scattered throughout every room of the apartment, including the kitchen, hall closet, laundry room, living room, bathroom, master bedroom, and spare bedroom, as well as outside the back door and outside the front door. The chemicals and supplies found included iodine, muriatic acid, Coleman fuel, coffee filters, acetone, Gum-Out, tubing, peroxide, plastic bags, match books, mineral spirits, syringes, and numerous other chemicals and supplies. Methamphetamine was identified in several containers of liquid seized from the apartment. Also found in the apartment, inside a Crown Royal bag under the end table in the living room, were two small baggies containing a total of 8.4 grams of marijuana. A black bowl and a set of hand scales were found under the end table as well.

The presence of the chemicals and supplies, as well as of the methamphetamine in the various containers of liquid, were all

---

[13] (Punctuation and footnotes omitted.) *Murrell v. State*, 273 Ga. App. 735 (1) (615 SE2d 780) (2005).

[14] The address of Apartment #6 is referred to in the record sometimes as "430" and sometimes as "438."

indicative of a methamphetamine manufacturing operation, according to the expert testimony at trial. Detective Grossman further testified that, due to the level of contamination found in the apartment, this particular methamphetamine laboratory had been in operation "probably" for several weeks.

Although no one was present in the apartment when the search began, the investigators found an exhaust fan running in the window at the back of the apartment, blowing the fumes out of the apartment. Venable, appellant's co-tenant, arrived during the search and was arrested. At the time of the search, appellant's car was parked in the apartment parking lot. The landlord's apartment manager, Leland Krug, testified that appellant and Venable had leased the apartment beginning on September 24, 2002; that the apartment rent had been paid through May 1, 2003; and that the rent had been paid "most of the time" by appellant, although "[o]nce in a while Dawn [Venable] would come up and pay it."

Krug also testified to "heavy visitor traffic" at the apartment: approximately twelve per hour, each staying between five and ten minutes. Detective Grossman described the heavy visitor traffic as a pattern typical of drug traffic.

Appellant was not present when the search of the apartment was conducted. Upon his subsequent arrest, his urine tested positive for methamphetamine but negative for marijuana.

(a) Appellant contends that the evidence is insufficient to support his conviction for manufacturing methamphetamine. Appellant apparently concedes that a methamphetamine laboratory was in operation at Apartment #6; he contends, however, that the mere fact that appellant was a co-tenant of the premises does not mean that appellant had any connection with this ongoing methamphetamine laboratory. The evidence presented at trial, on the contrary, shows that it would have been impossible for one co-tenant to hide from the other a methamphetamine laboratory of this scope.[15] Indeed, the evidence seems to show that no attempt at secrecy was made. Appellant paid the rent on this apartment; his car was parked in the apartment parking lot, close enough to this particular apartment that the investigators had to walk right past it in order to bring out the evidence presented at trial; and methamphetamine was found in

---

[15] Compare *Lush v. State*, 168 Ga. App. 740, 743-744 (9) (310 SE2d 287) (1983) (co-tenant's conviction of manufacturing methamphetamine affirmed where one co-tenant could not possibly have hidden an independent operation from the other in their small apartment; jury could have believed that defendant co-tenant was not connected with criminal enterprise, but chose not to do so).

appellant's system when he was arrested. The evidence was sufficient for the jury to find that appellant was engaged in the manufacture of methamphetamine.

(b) Appellant also challenges his conviction for possession of marijuana as not supported by sufficient evidence. We note that appellant was not present when the premises were searched, and so other people might have had an opportunity to place the marijuana under the end table where it was found by the police. Usually, the defense of "equal access" is one for the jury;[16] however, where the sole evidence that the defendant possessed contraband arises from the inference that the owner or tenant of the dwelling possesses its contents, positive evidence that another person had the access necessary to place the contraband will dissolve the inference.[17] In the case at bar, there is evidence that Venable was a co-tenant and a signatory to the lease, and that she arrived on the premises during the search. In these circumstances, the evidence of possession of marijuana presented here is insufficient to show that appellant possessed the marijuana.

The circumstances presented here are analogous to those presented in *Meadows v. State*.[18] There, the defendant's conviction of possession of cocaine found on his person was affirmed; however, his misdemeanor conviction for possession of marijuana was reversed.[19] The marijuana in *Meadows* was found under the porch of the house where Meadows and other people resided,[20] and, the court found, "there was absolutely no evidence that Meadows had ever controlled or possessed the marijuana which the officers found under the porch."[21] Similarly, there is no evidence presented in the case before us now which connects appellant to the small baggies of marijuana found hidden in a Crown Royal bag under the end table in his living room.

The marijuana found in appellant's living room is a very different matter from the open and obvious methamphetamine manufacturing operation which filled every nook and cranny of Apartment #6. "The equal access rule is inapplicable where the defendant must have had

---

[16] *Blue v. State*, 275 Ga. App. 671, 674 (2) (621 SE2d 616) (2005); *Sears v. State*, 244 Ga. App. 718, 719 (536 SE2d 605) (2000).

[17] *Phillips v. State*, 259 Ga. App. 331, 333 (3) (577 SE2d 25) (2003) (whether another had "equal access" to contraband at defendant's residence is a question for the jury).

[18] 247 Ga. App. 634 (545 SE2d 76) (2001).

[19] Id.

[20] Id. at 635.

[21] Id. at 637 (2).

knowledge of the presence of the drug."[22]

We therefore affirm appellant's conviction for manufacturing methamphetamine and reverse his conviction for possession of marijuana.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Adams, J., concur.*

DECIDED JULY 27, 2006 —
RECONSIDERATION DENIED AUGUST 29, 2006 —

*Michael R. McCarthy, Bentley C. Adams III*, for appellant.
*Kermit N. McManus, District Attorney, Susan L. Franklin, Assistant District Attorney*, for appellee.

---

[22] Robert E. Cleary, Jr., Kurtz Criminal Offenses and Defenses in Georgia, § D51, "Drug-Related Crimes," at 8, citing *Quarles v. State*, 142 Ga. App. 394 (2) (236 SE2d 139) (1977) (evidence sufficient where field cultivated in alternating rows of marijuana and corn).