A01A1184, A01A1185. HAWKS et al. v. HINELY et al.;
and vice versa.
A01A1186. BRACKETT v. HAWKS et al.
(556 SE2d 547)

BLACKBURN, Chief Judge.

In these three related appeals involving Georgia's Anti-Strategic Lawsuit Against Public Participation (SLAPP) Statute, OCGA § 9-11-11.1, John Hinely and Angela Brackett (the "Officials") appeal the trial court's dismissal without prejudice of their separate lawsuits against Jodi Hawks and Allen Williams (the "Constituents"). Each lawsuit revolves around allegations that the Constituents made in applications to recall the Officials as mayor and mayor pro tem of Port Wentworth. The trial court dismissed the Officials' actions because they failed to verify their complaints as required by the anti-SLAPP statute. On appeal, the Officials now contend that (a) the anti-SLAPP statute does not apply to their actions; (b) the Constituents waived any protection available under the anti-SLAPP statute; and, in the alternative, (c) the complaints satisfied the verification requirements of the anti-SLAPP statute, OCGA § 9-11-11.1 (b). The Constituents have also filed a cross-appeal, contending that the trial court erred by dismissing the Officials' complaints without prejudice rather than with prejudice. For the reasons set forth below, we find

that the trial court should have dismissed the claims of the Officials with prejudice.

On July 13, 2000, the Constituents filed applications with the Port Wentworth Election Superintendent seeking to recall the Officials pursuant to the Recall Act of 1989, OCGA § 21-4-1 et seq.[1] In their applications, the Constituents alleged that the Officials violated their oaths of office by inappropriately purchasing a fire truck for Port Wentworth.

On July 17, 2000, the Officials sought judicial review of the grounds asserted in the recall applications pursuant to the Recall Act of 1989. OCGA § 21-4-6. The Officials named the Constituents as defendants, as well as David Sutherland in his official capacity as Election Superintendent of Port Wentworth. In addition, the Officials sought an injunction to stop the recall process. In connection with their request for injunctive relief, the Officials verified that the allegations in their complaints were true; however, they did not submit a verification that complied with the requirements of the anti-SLAPP statute.[2]

On July 21, 2000, the Constituents, acting pro se, timely answered the complaints against them contending that all issues were moot because they had withdrawn their applications for recall petitions on July 20, 2000. On July 24, 2000, the Officials filed amended complaints, alleging for the first time, intentional and negligent infliction of emotional distress and physical injury brought about by the allegations in the applications. The Officials did not verify their amended complaints.

On July 31, 2000, the Constituents amended their answers and moved to dismiss the lawsuits on grounds that the Officials' complaints failed to meet the verification requirements of the anti-SLAPP statute. On August 14, 2000, more than ten days after notifi-

---

[1] The Recall Act of 1989 sets forth a detailed procedure to petition for the recall of public officials who hold elective office. Sponsors of applications for recall petitions submit official applications to the appropriate election superintendent. OCGA §§ 21-4-5 (b) (2), (d); 21-4-3 (3). The sponsors must testify by affidavit that the persons signing are electors authorized to sign and that the facts and grounds are true. OCGA § 21-4-5 (b) (1) (E) (i). Upon receipt of the application, the election superintendent determines the legal sufficiency of the application. OCGA § 21-4-5 (f) (2). In reviewing the sufficiency of the application, the election superintendent is granted unrestricted authority to examine registration records, to receive evidence and testimony, and to require personal appearance of any person signing the application. OCGA § 21-4-5 (f) (2). Upon certifying the legal sufficiency of the application, the election superintendent files a certification and issues official petition forms for circulation. OCGA § 21-4-5 (h).

[2] Under the anti-SLAPP statute, the verification must include, among other things, a statement that the suit is well grounded in fact and law or represents a good faith argument for the extension of existing law; that the act forming the basis of the suit is not privileged under OCGA § 51-5-7; and that the suit is not filed for any improper purpose, such as to suppress a person's right to free speech or right to petition government. OCGA § 9-11-11.1 (b).

cation of the deficiency, the Officials filed amended verifications that complied with the anti-SLAPP statute.

After a hearing, the trial court found that the Officials' claims were not mooted by the withdrawal of the recall applications because the Recall Act of 1989 does not allow for such complete withdrawal.[3] The trial court next dismissed the Constituents' applications because they were not supported by sufficient evidence of wrongdoing. The trial court also dismissed the Officials' lawsuits without prejudice, finding that they had not been properly verified in accordance with the anti-SLAPP statute. It is from the dismissal of the lawsuits that all parties appeal.

### Case Nos. A01A1185 and A01A1186

1. The Officials claim that the trial court erred by (a) applying the anti-SLAPP statute to this case, (b) concluding that the Constituents had not waived any protection available under the anti-SLAPP statute, and (c) finding that the complaints did not satisfy the verification requirements of the anti-SLAPP statute, OCGA § 9-11-11.1 (b).

(a) The Officials claim that the anti-SLAPP statute's verification requirements do not apply to their lawsuits. We disagree.

The stated purpose of the anti-SLAPP statute is "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances." OCGA § 9-11-11.1 (a). With the anti-SLAPP statute, the General Assembly sought to prevent the chilling effect that abusive lawsuits would have on the valid exercise of these rights. Id.

To prevent abusive litigation against a person exercising those rights, the statute provides that a detailed verification must be filed with any claim arising from an act "which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." OCGA § 9-11-11.1 (b). Such protected acts are further defined to include:

[(1)] any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or [(2)] any written or oral statement, writing, or petition made in con-

---

[3] We express no opinion as to whether the trial court was correct in its assessment that applications for recall petitions may not be withdrawn, as this issue is not before the Court.

nection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

OCGA § 9-11-11.1 (c).

Here, the Constituents followed the statutory procedure established by the Recall Act of 1989, OCGA § 21-4-1 et seq., to petition for the recall of the Officials. Filing an application for the recall of elected officials in accordance with state law is an act in furtherance of the right to petition the government to redress grievances within the meaning of Georgia's anti-SLAPP statute. See OCGA § 9-11-11.1 (b). Accordingly, the Officials' lawsuits, which stem from statements made in the applications, are subject to the verification requirements of OCGA § 9-11-11.1 (b).

The Officials argue narrowly that the anti-SLAPP statute encompasses only statements made to existing "proceedings." They contend that, because the statements in the recall applications were made prior to the initiation of a "proceeding," the verification requirements of the anti-SLAPP statute do not apply to their complaints. " 'It is the duty of the court[, however,] to consider the results and consequences of any proposed (statutory) construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature.' " *Cronan v. State*.[4]

The Officials' myopic construction would produce such undesirable and illogical results and consequences. The legislative intent behind the anti-SLAPP statute is to protect the public's right to petition the government for the redress of grievances on matters of public concern. OCGA § 9-11-11.1 (a). Excluding the petition itself that initiates a "proceeding" to address matters of public concern from the reach of the anti-SLAPP statute would defeat a central purpose of the statute — to protect the right to petition government. We have no difficulty finding that the statements made in the recall applications trigger the procedural safeguards of the anti-SLAPP statute. The trial court did not err by applying the verification requirements of OCGA § 9-11-11.1 to the Officials' lawsuits.[5]

(b) The Officials claim that the Constituents waived their right to raise the procedural safeguards of the anti-SLAPP statute by failing to raise lack of verification as grounds for dismissal in their original answers. Again, we disagree.

---

[4] *Cronan v. State*, 236 Ga. App. 374, 377 (2) (511 SE2d 899) (1999).

[5] We also reject the Officials' argument that the attempted withdrawal of the recall applications avoids the anti-SLAPP statute. The Officials' lawsuits arise out of statements made by the Constituents in furtherance of their right to petition the government concerning matters of public interest. OCGA § 9-11-11.1. Withdrawal of the applications does not change this fact. The status of the recall applications is therefore irrelevant.

Although the Constituents did not raise the anti-SLAPP statute as a defense in their initial answers, filed July 21, 2000, the Officials likewise did not assert claims against the Constituents in their initial complaints; they merely sought superior court review of the sufficiency of the applications. Therefore, the anti-SLAPP statute was not implicated at the time the Constituents initially answered. The anti-SLAPP statute did not apply until the Officials filed amended complaints, asserting claims for emotional distress and physical injury against the Constituents. Once the Officials asserted these claims, the Constituents immediately raised the anti-SLAPP statute as grounds for dismissal. Therefore, the Constituents did not waive the right to raise the anti-SLAPP statute's verification requirements as a defense.[6]

(c) In the alternative, the Officials erroneously claim that their complaints did satisfy the verification requirements of the anti-SLAPP statute.

Once the anti-SLAPP statute applies, a claimant must file the statutory verification contemporaneously with the pleading. OCGA § 9-11-11.1 (b).

> Such written verification shall certify that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.

OCGA § 9-11-11.1 (b). If the claim is not verified as required by the anti-SLAPP statute, it "shall be stricken," unless it is verified within ten days after the omission is called to the attention of the party asserting the claim. OCGA § 9-11-11.1 (b); *Davis v. Emmis Publishing Corp.*[7]

The Officials argue that the penalty of striking a pleading

---

[6] We express no opinion as to whether the failure to meet the verification requirements of the anti-SLAPP statute is an affirmative defense which is waivable if not raised in the first responsive pleading.

[7] *Davis v. Emmis Publishing Corp.*, 244 Ga. App. 795, 798 (536 SE2d 809) (2000).

applies only where absolutely no verification is attached to the complaint, not where a deficient verification is timely filed and later corrected outside the ten-day period. In support of this argument, the Officials cite *Davis,* supra. However, this argument fails.

We are bound to follow the express statutory language of OCGA § 9-11-11.1 (b), which requires that claims "not verified as required by this subsection" must be stricken unless remedied within ten days after the defect is called to the attention of the person making the claim. Whether the verification is completely omitted or merely deficient upon filing, the claimant must remedy the situation within the statutory ten-day period or the complaint "shall be stricken." OCGA § 9-11-11.1 (b); *Davis,* supra. This statutory language, which is plain on its face, does not allow for the construction now proposed by the Officials.

Moreover, *Davis,* supra, does not support the Officials' argument. In *Davis,* the plaintiff filed proper verifications with his amended complaint more than ten days (approximately two months) after the failure to verify was first brought to his attention. *Davis,* supra. There, we held that failure to verify as required by OCGA § 9-11-11.1 (b) was not an amendable defect unless done within the statutory ten-day period. Id. We did *not* hold, as the Officials argue, that the ten-day period applies only when a claimant omits the verification altogether.

Here, it is undisputed that the Officials filed verifications with their original complaints, but the verifications did not conform to the requirements of the anti-SLAPP statute. OCGA § 9-11-11.1 (b). The Officials verified only that the factual statements contained in their complaints were true; their counsel did not file verifications at all. The Officials did not file proper verifications until August 14, 2000, 14 days after being served with the amended answers that called the verification defects to their attention. Thus, the amended verifications were untimely, and the claims were properly stricken. The trial court did not err.

### Case No. A01A1184

2. The Constituents contend that the trial court erred by dismissing the Officials' lawsuits without prejudice rather than with prejudice. We agree because, to hold otherwise, would frustrate the purpose of the anti-SLAPP statute.

As discussed above, the explicit rationale behind the anti-SLAPP statute is "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances." OCGA § 9-11-11.1 (a). In order to

achieve this purpose, the anti-SLAPP statute employs verification requirements to discourage cavalier and unfounded lawsuits filed against someone exercising his right to petition government. OCGA § 9-11-11.1 (b). By requiring the party opposing the petitioner and his attorney to verify the substance of their complaint, and thereby face sanctions if the verification proves substantively improvident, the anti-SLAPP statute insures that any challenge to the right to petition government must be based on substantive facts.

With this rationale in mind, we believe that the anti-SLAPP statute's mandate that an improperly verified complaint shall be stricken necessarily means that the claims in any such complaint must be dismissed with prejudice. In *Davis*, supra, we held:

> [I]t is undisputed that Davis failed to file the verifications with his complaint and that the omission was raised by the defendants in their answer. It is also undisputed that Davis filed the verifications with his amended complaint more than ten days (approximately two months) after the failure to file was first brought to his attention. We are bound to follow the express language of the statute. Applying that language, Davis was not free to amend the complaint after the ten-day period for the remedy of such failure had already expired. Furthermore, the statute explicitly mandates that the claim "shall be stricken" if the verification is not filed timely. " 'Shall' ordinarily denotes command and not permission." *Ring v. Williams*.[8] Thus, the trial court erred in holding that Davis' failure to verify his complaint as required by law was an amendable defect.

Id. at 798 (3).

Contrary to the arguments of the Officials, dismissal of improperly verified complaints pursuant to OCGA § 9-11-11.1 is neither improper nor extreme. The verification requirements of the statute are relatively simple and straightforward. Minimal effort is necessary by the party bringing suit to verify his complaint, and, if that party verifies improperly, he is given an additional ten days from the day that he is informed of the deficiency to correct his complaint. A party who fails to comply with such a simple prerequisite, which, in turn, protects the important right to petition government, should be subject to dismissal with prejudice. Moreover, we point out that such dismissal affects only the claims raised in that particular complaint which are not properly verified. Other claims may be brought later in a separate complaint if they are properly verified.

---

[8] *Ring v. Williams*, 192 Ga. App. 329, 330 (2) (384 SE2d 914) (1989).

And, this procedure strikes the appropriate balance between one party who wishes to petition the government to address grievances and another party who wishes to bring a lawsuit stemming from the acts of the petitioner. The petitioner is encouraged to file his grievances with protection from vengeful politicos, while opposing parties, who have valid substantive claims, are still allowed to bring such claims following a simple verification procedure.

In dicta, *Browns Mill Dev. Co. v. Denton*[9] purports that dismissal for failure to comply with the verification requirements of OCGA § 9-11-11.1 (b) is without prejudice. As an initial matter, that issue was not before this Court in *Denton,* and, as such, it is not controlling here. Moreover, we point out that, because all judges on the panel in *Denton* did not concur fully, that case is physical precedent only.

*Denton* reached its conclusion by comparing the dismissal of claims pursuant to OCGA § 9-11-11.1 (b) with the handling of claims under OCGA § 9-11-12 (b). Specifically, *Denton* cites OCGA § 9-11-12 (b) (1) (lack of subject matter jurisdiction), (5) (insufficiency of service of process), and (7) (failure to join a necessary party) for its contention. While *Denton* is correct in making reference to OCGA § 9-11-12 (b), the most appropriate analogy, however, is to OCGA § 9-11-12 (b) (6) involving failure to state a claim on which relief can be granted. The verification process under OCGA § 9-11-11.1 (b) insures that the claims it covers are substantively proper, not frivolous attempts to chill political speech. As such, like a decision on an OCGA § 9-11-12 (b) (6) motion, a dismissal pursuant to OCGA § 9-11-11.1 (b) operates as a dismissal with prejudice.

*Judgments affirmed in Case Nos. A01A1185 and A01A1186. Judgment reversed in Case No. A01A1184. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 16, 2001 — 

*Jones, Boykin & Associates, Charles W. Snyder,* for Hawks.
*Savage & Turner, Robert S. Kraeuter, Steven E. Scheer,* for Hinely and Brackett.

---

[9] *Browns Mill Dev. Co. v. Denton,* 247 Ga. App. 232 (543 SE2d 65) (2000).