**Mark BUCKLEY, et al., Plaintiffs,**

v.

**DIRECTV, INC., et al., Defendants.**

**No. CIV.A.1:03–CV–484–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 26, 2003.

Paula Jeanette McGill, The McGill Law Firm, Lisa Dionne Wright, Law Office of Lisa D. Wright, Atlanta, GA, for Mark Buckley, Brian Cieszynski, Keith Fortner, Gary Frosolono, Dennis Martinez, James Newell, plaintiffs.

Dennis Gary Lovell, Jr., Boyd B. Newton, Carlock Copeland Semler & Stair, Atlanta, GA, Michael E. Williams, phv, Dale H. Oliver, phv, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, CA, for DIRECTV, Inc., Hughes Electronics Corp., General Motors Corp., Stump, Storey & Callahan, P.A., defendants.

## ORDER

SHOOB, Senior District Judge.

This action is before the Court on defendants' motion to dismiss. For the following reasons, the Court grants the motion.[1]

*Background*

This action arises out of threats by a leading provider of satellite television service to pursue legal action against persons allegedly engaged in signal piracy. Defendant DIRECTV, Inc., sent letters to thousands of individuals, including plaintiffs in this action, who had been identified as purchasers of devices used to unscramble DIRECTV's satellite television signals

---

1. The Court denies the parties' requests for oral argument. The Court grants the parties' requests that the Court take judicial notice of a Department of Justice press release and two recent court decisions in related cases.

without authorization and permit viewing of DIRECTV's programming without payment.[2] The letters explained the illegal nature of such conduct, notified the recipients that DIRECTV intended to pursue legal action against them, and provided them an opportunity to resolve potential litigation by way of settlement prior to the filing of a complaint. A follow-up letter was sent to individuals who did not respond to the initial letter reiterating the accusation that the recipient had purchased illegal signal theft equipment and stating that unless the recipient contacted the sender within 14 days a lawsuit would be filed based upon an enclosed draft complaint. DIRECTV has since filed over 2,100 lawsuits against such individuals, including a substantial number in this district.

After receiving such letters, six individual plaintiffs filed this action against DIRECTV, its parents, Hughes Electronics Corporation and General Motors Corporation, and the Orlando, Florida, law firm of Stump, Storey & Callahan, P.A., which sent the letters in question. Plaintiffs allege that the letters contain false, misleading, and deceptive statements, were sent without investigating whether the recipients had actually obtained or used a signal theft device and without any serious intent of pursuing litigation against the recipients, and were, in essence, attempts to extort money from such individuals by way of threat and intimidation. Plaintiffs assert claims against defendants for unfair and deceptive practices in violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10–1–390 *et seq.*, for violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, O.C.G.A. § 16–14–1 *et seq.*, and for stubborn litigiousness under O.C.G.A. § 13–6–11. In addition to damages, plaintiffs seek declaratory and injunctive relief prohibiting defendants from continuing their alleged actions and an accounting of all money received as a result of such conduct.

*Discussion*

■ Defendants move to dismiss plaintiffs' complaint pursuant to O.C.G.A. § 9–11–11.1, the so-called "anti-SLAPP" statute. SLAPP suits, or Strategic Litigation Against Public Participation, are civil lawsuits aimed at preventing citizens from exercising their constitutional rights to free speech and to petition the government for redress of grievances in connection with issues of public interest or concern. *See Providence Constr. Co. v. Bauer,* 229 Ga.App. 679, 680, 494 S.E.2d 527 (1998).

In an effort to prevent such abusive litigation, the anti-SLAPP statute imposes certain procedural safeguards. Any complaint arising from an act that "could reasonably be construed as an act in furtherance of" a defendant's free speech or petition rights must be accompanied by a written verification by both the party and his or her attorney certifying their belief, after reasonable inquiry, that the complaint "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." O.C.G.A. § 9–11–11.1(b). The plaintiff and her counsel must also certify that the act forming the basis for the complaint is not a privileged communication under O.C.G.A. § 51–5–7(4),[3] and that the suit

2. DIRECTV obtained the identities of these individuals from customer lists seized pursuant to civil writs of seizure issued by United States District Court judges authorizing United States Marshals and DIRECTV representatives to seize and impound products and related business records from individuals and companies designing, manufacturing, or trafficking in such equipment.

3. Code Section 51–5–7(4) deems privileged any statement made in good faith in furtherance of the rights of free speech or to petition the government for a redress of grievances.

has not been filed "for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation." *Id.*

If the anti-SLAPP statute is applicable and the complaint is not verified, then it must be stricken unless it is verified within 10 days after the omission is called to the plaintiff's attention. *Id.* If the complaint is verified in violation of the statute, the court must impose an appropriate sanction, which may include dismissal of the claim and an order to pay the other party or parties their reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee. *Id.* Plaintiffs and their counsel have not verified their complaint in this case in accordance with the statutory requirements.

Defendants argue that DIRECTV's pre-litigation demand letters, which form the basis for all of plaintiff's claims, fall squarely within the protection of the anti-SLAPP statute, and that plaintiff's unverified complaint must therefore be dismissed with prejudice. Plaintiffs contend that the statute does not apply because DIRECTV's demand letters did not involve "an issue of public interest or concern." The Court concludes that the anti-SLAPP statute applies to plaintiffs' claims. Therefore, the Court grants defendants' motion to dismiss.

The filing of a lawsuit is a well-recognized aspect of the First Amendment right to petition the government for a redress of grievances. *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983); *McCain v. Scott,* 9 F.Supp.2d 1365, 1370 (N.D.Ga. 1998). Consistent with this principle, the anti-SLAPP statute defines an "act in furtherance of the right of free speech or the right to petition government for a redress of grievances" to include "any written or oral statement, writing, or petition made before or to a . . . judicial proceeding or . . . in connection with an issue under consideration or review by a . . . judicial body . . . ." O.C.G.A. § 9–11–11.1(c). This language has been interpreted to include communications made in preparation or anticipation of legal proceedings. *See Hawks v. Hinely,* 252 Ga.App. 510, 513, 556 S.E.2d 547 (2001).

In an analogous case interpreting California's anti-SLAPP statute, Cal.Civ.Proc. Code § 425.16, which is similar to Georgia's law, the court found that a pre-litigation demand letter was protected by the statute because "[f]iling a lawsuit is an exercise of one's constitutional right of petition, and statements made in connection with or in preparation of litigation are subject to" the anti-SLAPP statute. *Kashian v. Harriman,* 98 Cal.App.4th 892, 120 Cal.Rptr.2d 576, 588 (2002). Following *Kashian,* a California superior court recently dismissed a lawsuit against DIRECTV virtually identical to this one. *Blanchard v. DIRECTV, Inc.,* Case No. BC284166 (Los Angeles County Super. Ct. April 1, 2003).

Plaintiffs' contention that their complaint does not involve matters of public interest or concern is without merit. First, plaintiffs acknowledge in their complaint that their claims arise from matters of public interest and concern. In fact, as a matter of law, in order to maintain their action under Georgia's Fair Business Practices Act (FBPA), plaintiffs' claim must involve matters of public interest or concern. *See Catrett v. Landmark Dodge, Inc.,* 253 Ga.App. 639, 642, 560 S.E.2d 101 ("The FBPA does not apply . . . to transactions that are essentially private").

Thus, plaintiffs allege in their complaint that "[t]he conduct of defendants ... with respect to *members of the general public* and specifically recipients of the Demand Letters was an 'unfair' business act or practice," and that the fairness of defendants' conduct must be "determined by weighing the practice's impact on *consumers and members of the general public* against the business justification for the conduct." Complaint ¶ 25 (emphasis added). Plaintiffs further allege that defendants "attempted to acquire[ ] money or property from *members of the general public*," and "will continue to violate the law and deceive the *public* unless this court enjoins them." Complaint ¶¶ 26, 28 (emphasis added).

■ Second, not only do plaintiffs concede that their claims involve matters of public interest and concern, the underlying facts bear this out as well. As alleged by plaintiffs, "DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than 10 million homes and business in the United States." Complaint ¶ 9. Plaintiffs also allege that DIRECTV has sent out between 50,000 and 100,000 demand letters to individuals throughout the country as part of its attempts to combat illegal signal piracy (Complaint ¶ 16), a practice that drives up prices for DIRECTV's 10 million paying customers. Thus, the facts establish that the demand letters were sent to tens of thousands of people in connection with an issue that affects millions. Any action involving such a large number of people is, by definition, a matter of public interest and concern.[4]

■ Plaintiffs complain that DIRECTV did not make an adequate investigation into the facts before sending the demand letters, and that the letters contain false, misleading, or deceptive statements. If so, their remedy would be to obtain a dismissal of the lawsuit on the merits and then pursue sanctions under Rule 11 of the Federal Rules of Civil Procedure or an action for malicious prosecution. Their remedy is not a pre-litigation injunction against DIRECTV's seeking redress for the alleged theft of its property. That is clearly barred by Georgia's anti-SLAPP statute.[5]

■ Finally, plaintiffs also complain that DIRECTV had no serious intent of pursuing litigation against the recipients of its letters, and that the letters constitute extortion. The number of lawsuits filed by DIRECTV belies the former claim. As for the latter, the Court is not aware of any authority holding that a demand to settle a claim before pursuing litigation amounts to

---

**4.** In this regard, the Court takes judicial notice of a February 11, 2003, press release by the Department of Justice announcing the indictment of 17 individuals throughout the country for developing and selling the same type of signal theft technology allegedly purchased by plaintiffs in this case. The government's prosecution of these individuals is indicative of the public concern over signal theft.

**5.** Plaintiffs assert in passing, without any argument, that the anti-SLAPP statute does not apply in federal court. This contention is without merit. Although the Eleventh Circuit has not addressed this issue, the Ninth Circuit has held that there is no direct conflict between the Federal Rules of Civil Procedure and the California anti-SLAPP statute, and that adopting the statute serves the purpose of the *Erie* doctrine. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 970–73 (9th Cir.1999); *see also Airtran Airlines, Inc. v. Plain Dealer Pub. Co.,* 66 F.Supp.2d 1355, 1369 (N.D.Ga.1999)(assuming without deciding that Georgia anti-SLAPP statute applies in federal diversity actions).

extortion. In fact, such demand letters do not fit the legal definition of extortion. Under Georgia law, extortion occurs when a person obtains the property of another by threatening to (1) inflict bodily injury on anyone or commit any other criminal offense; (2) accuse anyone of a criminal offense; (3) disseminate any information tending to subject any person to hatred, contempt, or ridicule or to impair his credit or business repute; (4) take or withhold action as a public official or cause an official to take or withhold action; (5) bring about or continue a strike, boycott, or other collective unofficial action; or (6) testify or provide information or withhold testimony or information with respect to another's legal claim or defense. O.C.G.A. § 16–8–16(a). DIRECTV's demand letters do not fall within any of these categories.

*Summary*

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss [# 2–1]; DENIES defendants' request for oral argument [# 3–1]; GRANTS defendants' requests for judicial notice [# 11–1, # 14–1]; DENIES plaintiffs' request for oral argument [# 15–1]; and GRANTS plaintiffs' request for judicial notice [# 17–1]. This action is hereby DISMISSED WITH PREJUDICE.