A03A1422. HARKINS v. ATLANTA HUMANE SOCIETY et al.
(590 SE2d 737)

MILLER, Judge.

Barbara L. Harkins appeals from the trial court's order denying her second motion to dismiss a defamation lawsuit pursuant to Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute. OCGA § 9-11-11.1. Atlanta Humane Society (AHS) and its executive director sued Harkins for defamation after Harkins made statements concerning AHS's procedures and methods of animal control while being interviewed by a local television station. Harkins's statements led to an investigation, and AHS lost some of its funding as a result. Harkins moved to dismiss twice, and the trial court denied both motions. The first motion was based on the plaintiffs' failure to verify their complaint pursuant to the requirements of OCGA § 9-11-11.1 (b). The plaintiffs amended their complaint to add the requisite verification, and Harkins filed a second motion to dismiss based on the substantive argument that the lawsuit against her had been unlawfully initiated in response to her exercising her right to free speech. The trial court denied this second motion (making no factual findings as to the basis for the denial) and further refused to

reconsider its order, prompting this interlocutory appeal. We hold that, despite appellees' compliance with the procedural requirements for verifying their complaint pursuant to the anti-SLAPP statute, the undisputed facts here reveal that the lawsuit initiated by AHS and its executive director was prohibited by the statute and should have been dismissed. We therefore reverse.

The record reveals that Harkins was a full-time AHS employee in 1998, serving as an adoption counselor. In 1999 Harkins met with Bill Garrett, the executive director of AHS, to discuss her concerns regarding AHS's operating procedures. In this meeting, Garrett advised Harkins of various AHS procedures and declined to adopt most of her suggestions. Dissatisfied with the meeting, Harkins contacted the AHS Board by letter to inform them of her concerns regarding animal treatment and to suggest policy changes. Harkins did not receive a response from the Board, so she met with Garrett again.

In September 2001, Harkins resigned from AHS. That summer WSB-TV had initiated an investigation into AHS, and this investigation led to a news spotlight series that aired on November 1, 2, and 9, 2001. Harkins was one of many individuals interviewed for the spotlight series, where she made several statements that later formed the basis for AHS's defamation lawsuit against her:

(1) Responding to a TV reporter's statement that AHS "claims its clinic is open twenty-four hours a day, seven days a week, 365 days a year," Harkins said, "No. There's no one there at night."

(2) Harkins further stated, "Prior to leaving [AHS], I asked 'Why do we not investigate cruelty?' [and Bill Garrett] said '[W]e don't — we lose money on every cruelty investigation.' "

(3) Harkins also said, "And, I'm passionate to a cause. And things are not right, and they need to change. And people of Atlanta need to know. Things are desperately wrong [at AHS]."

(4) In connection with her stated observation that AHS ambulances are not used, Harkins said, "That's my experience, yes."

(5) Referring to AHS cruelty investigations over a three-year period, Harkins said, "I just know of one."

AHS provided animal control services for Atlanta and Fulton County pursuant to a contract between the three of them. Two hundred eighty-one thousand dollars of AHS's 2001 budget of $1.9 million came from taxpayer funds from Fulton County, and an additional $472,000 came from the City of Atlanta. The contract was automatically renewed every year contingent on the governments' approving the contract's amounts in their annual budget. If the County and the City wished to terminate their contract with AHS, they could do so with a 90-day notice to AHS.

The Fulton County Board of Commissioners held a meeting on

November 21, 2001, and at this meeting asked for (i) a report regarding the allegations against the Fulton County Animal Control Board, and (ii) a presentation concerning these allegations to be given at their next meeting. Harkins and others met with the AHS staff in the following week to discuss AHS's animal control contract with Fulton County. At the next meeting of the Fulton County Commission in early December, the liaison between the Commission and Fulton County Animal Control gave a report on the allegations. Garrett wrote a letter to the Commission, in which he implied that the allegations were false and expressed the importance of the services AHS provides. On December 19, 2001, the Commission heard additional comments concerning whether Fulton County should maintain its animal control contract with AHS. Two days after this meeting, AHS and Garrett filed their defamation suit against Harkins.

Harkins moved to dismiss the lawsuit pursuant to OCGA § 9-11-11.1 (b), because plaintiffs failed to verify their complaint. Six days later, AHS and Garrett filed affidavits to fulfill the verification requirement. See OCGA § 9-11-11.1 (b). The trial court denied Harkins's motion.

Harkins then moved to dismiss a second time, arguing that, despite the verification, the lawsuit was still improper in light of the anti-SLAPP statute, because the suit itself was an unlawful attempt to infringe upon Harkins's right to free speech. The court denied the second motion, and Harkins moved for reconsideration. Harkins's motion for reconsideration was denied, and having followed the interlocutory appeal procedure, she now appeals.

1. The central question on appeal is whether the verification requirement of the anti-SLAPP statute is merely a procedural device that, once complied with, prevents a potential SLAPP suit from being dismissed, or whether, despite compliance with the procedural verification requirements, a claim may still be dismissed based on the substantive protection that the anti-SLAPP statute provides for persons who exercise their right to free speech.

In order to resolve this central issue, we must first look to the stated purpose of the anti-SLAPP statute, which is contained in OCGA § 9-11-11.1 (a):

> The General Assembly of Georgia finds and declares that it is in the public interest to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances. The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional rights of freedom of speech and the right to petition govern-

ment for a redress of grievances should not be chilled through abuse of the judicial process.

Thus, the statute provides protection for any act "which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern. . . ." OCGA § 9-11-11.1 (b). Once the anti-SLAPP statute applies, a claimant must verify the complaint pursuant to the requirements of OCGA § 9-11-11.1 (b), or the claim may be properly dismissed. *Hawks v. Hinley*, 252 Ga. App. 510, 514-515 (1) (c) (556 SE2d 547) (2001).

> Such written verification shall certify that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation. If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim.

OCGA § 9-11-11.1 (b).

Appellees argue that the mere timely filing of their affidavits (which mirrored the language of the statute) was sufficient to satisfy the verification requirement, as such requirement was merely a procedural prerequisite for their defamation claim to go forward. We disagree.

The Supreme Court of Georgia recently held in *Denton v. Browns Mill Dev. Co.*, 275 Ga. 2, 6 (561 SE2d 431) (2002), "that the intent of the [anti-SLAPP] statute is to encourage the exercise of free speech and afford a procedural protection to acts of communication on public issues." (Citation omitted.) In connection with this procedural protection, the Court further held that the mere procedural filing of a verification does not end the matter as to whether a claim could go for-

ward, as "the court can ultimately reject the verification, to the plaintiffs' expense. See OCGA § 9-11-11.1 (b) & (d)." Id. at 7.

Furthermore, as we held in *Metzler v. Rowell*, 248 Ga. App. 596, 598 (1) (547 SE2d 311) (2001), the "mechanical filing of a verification with the complaint . . . does not preclude dismissal if the claim is found by the trial court to infringe on the rights of free speech or petition as defined by the statute." Indeed, as provided in the statute, "[e]ven if a verification is filed with the complaint, the trial court may nevertheless impose sanctions, including dismissal, if [the] claim is verified in violation of [the anti-SLAPP statute]." (Citation and punctuation omitted.) Id.; see OCGA § 9-11-11.1 (b).

The plain language of OCGA § 9-11-11.1 (b) authorizes dismissal of a claim that is not "well grounded in fact," not "warranted by . . . a good faith argument" or "existing law," or if the statements are "privileged." Determining whether any of these aforementioned grounds applies requires more than a simple determination as to whether an affidavit was filed within a specified time. Based on the plain language of the statute, existing case law, and the statute's express purpose, we hold that the verification requirement of the anti-SLAPP statute is procedural in nature in that verifications must contain certain assertions and must be filed within a certain time, but is also substantive in nature in that to determine whether the requirements of the statute have been met, the court must take a substantive look at the verification offered to ensure that the underlying lawsuit has not been initiated for an improper purpose. An interpretation that the verification requirement is entirely procedural in nature would be contrary to the stated purpose of the statute, which is to "encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech. . . ." OCGA § 9-11-11.1 (a). If the protection offered by the anti-SLAPP statute could be undermined by the mere timely filing of a pro forma affidavit (such as in situations where the underlying lawsuit was advanced to have a chilling effect on free speech), the statute itself would be rendered virtually meaningless.

2. Since the undisputed facts of record here indicate that the statements made by Harkins were protected statements under the anti-SLAPP statute, appellees' lawsuit should have been dismissed.

As noted in Division 1, the anti-SLAPP statute provides protection for acts that can reasonably be construed as acts in furtherance of one's right of free speech or right to petition the government for redress of grievances in connection with an issue of public concern. OCGA § 9-11-11.1 (b), (c). Such acts include "any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," or such a statement or petition made in connection

with an issue under consideration or review by such a governmental body. OCGA § 9-11-11.1 (c); see *Metzler*, supra, 248 Ga. App. at 598 (1). Such protected statements even include those that initiate a proceeding to address matters of public concern. See *Hawks*, supra, 252 Ga. App. at 513 (1) (a).

After Harkins's statements were aired on WSB-TV, the Fulton County Commission initiated proceedings to investigate the allegations against AHS and even requested a report on the allegations. In addition, AHS received over $750,000 in taxpayer funds to sustain its operations in Atlanta and Fulton County, thereby making AHS accountable to the public for ineffective animal control or inefficient use of taxpayer funds. The Fulton County Commission itself even stated in its December 5 meeting that AHS's services or alleged lack thereof presented "an issue which is of great concern to many, many citizens of Fulton County." The evidence here shows that Harkins's statements were clearly acts in furtherance of her right of free speech in connection with an issue of public concern as defined by the anti-SLAPP statute and existing case law.

Clearly under this statute, Harkins has a substantive right to exercise her constitutional right of free speech regarding a matter of public concern. The trial court therefore should have dismissed appellees' defamation lawsuit that was initiated in response to Harkins's protected statements. We direct the trial court, upon receipt of the remittitur, to dismiss the complaint.

3. In light of our holdings in Divisions 1 and 2, we need not reach Harkins's remaining enumeration.

*Judgment reversed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED NOVEMBER 14, 2003 —
RECONSIDERATION DENIED NOVEMBER 26, 2003 — 

*Stuckey & Manheimer, Hollie G. Manheimer, Gerald R. Weber, Jr.,* for appellant.

*Lipshutz, Greenblatt & King, Edward L. Greenblatt, James V. Zito,* for appellees.

*Dow, Lohnes & Albertson, Christopher L. Meazell, Kesler T. Roberts,* amici curiae.