FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P.J. and MCFADDEN, J.

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 16, 2012**

# In the Court of Appeals of Georgia

A12A0898. SETTLES BRIDGE FARM, LLC v. MASINO et al.

McFADDEN, Judge.

This appeal is from a trial court order dismissing a complaint pursuant to Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, OCGA § 9-11-11.1. Because the trial court correctly found that the alleged statements which form the basis for the complaint were privileged under that statute, we affirm.

Settles Bridge Farm, LLC filed a complaint against Nick Masino and the Gwinnett Chamber of Commerce, Inc., claiming tortious interference with business and contractual relations. Settles Bridge complains about a telephone call from chamber vice president Masino to a city manager, which purportedly acted as the catalyst for zoning changes that interfered with Settles Bridge's ability to sell certain property. The complaint alleges that Settles Bridge had agreed to sell 36.5 acres of

land located in a residential area of the City of Suwanee to Notre Dame Academy, which planned to build a school on the property. The city confirmed to representatives of both Settles Bridge and Notre Dame that under the zoning code, construction of a school on the property was permitted as a "by-right use." In February 2008, Notre Dame's president, Debra Orr, attended a chamber of commerce meeting. During a break in the meeting, chamber vice president Masino heard Orr discussing the relocation of Notre Dame to the property. Masino later called City Manager Marty Allen to inquire about the property's zoning and was informed that a school was permissible as a "by-right use." Thereafter, Allen sent an email to the mayor and city council advising that the zoning ordinance should be amended to prevent Notre Dame's relocation to the property. The mayor and city council subsequently adopted a moratorium on large projects within residential districts, which precluded the application for or issuance of a building permit for the property. In May 2008, the city approved an amendment to the zoning ordinance, which required a special use permit to develop the property. Unable to develop the property for its school, Notre Dame terminated the contract to buy the property. According to the complaint, the city never would have acted to impede the Notre Dame project and purchase of the property without Masino's conduct.

2

Masino and the chamber of commerce moved to dismiss the complaint based on Georgia's anti-SLAPP statute. After a hearing, the trial court granted the motion to dismiss the complaint pursuant to OCGA § 9-11-11.1, finding that Masino's alleged statements to the city manager were privileged because they related to matters of public concern. The trial court also dismissed as moot Settles Bridge's motion to lift the automatic stay for limited discovery. Settles Bridge appeals.

1. *Georgia's anti-SLAPP statute.*

The purposes of the anti-SLAPP statute "are to encourage citizen participation in matters of public significance through the exercise of the right of free speech and the right to petition the government for redress of grievances, and to prevent their valid exercise from being chilled through abuse of judicial process." *Atlanta Humane Society v. Harkins,* 278 Ga. 451, 452 (1) (603) SE2d 289) (2004). (Paraphrasing OCGA § 9-11-11.1 (a)). To those ends, OCGA § 9-11-11.1 (b) provides that a claimant and its attorney must file a verification, certifying that to the best of their knowledge the claim

> is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress

3

a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.

But the filing of the verification does not end the matter because the trial court can ultimately reject the verification and dismiss the claim. *Alanta Humane Society*, supra at 453 (1). "If a claim is verified in violation of this Code section, the court, upon motion or upon its own initiative, shall impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which may include dismissal of the claim[.]" OCGA § 9-11-11.1 (b). Thus, if the trial court finds that the claim infringes on the rights of free speech or petition, it may dismiss the claim. *Atlanta Humane Society*, supra at 454 (1).

2. *Confidentiality agreement.*

Settles Bridge argues that the trial court erred in finding that the anti-SLAPP statute applies to its claims based on Masino's statements to the city manager because they violated an agreement that Masino had with the chamber not to divulge confidential information to anyone outside the chamber. As an initial matter, to the extent Settles Bridge is arguing that the anti-SLAPP statute is inapplicable to its complaint, such an argument is inconsistent since Settles Farm filed the verification as required by that statute and, in its response to the motion to dismiss, expressly

4

conceded that "the claims against Masino and The Chamber are governed by O.C.G.A. § 9-11-11.1." See *Hindu Temple &c. v. Raghunathan*, 311 Ga. App. 109, 115 (1) (714 SE2d 628) (2011) (argument that trial court erred in finding anti-SLAPP statute applicable particularly disingenuous in light of filings made pursuant to OCGA § 9-11-11.1 (b) showing that plaintiffs were obviously under the impression that the statute did in fact govern their claims).

Regardless, Settles Bridge's reliance on the confidentiality agreement between Masino and the chamber is completely misplaced. There is no evidence that such an agreement was intended for Settles Bridge's benefit. "In order for a third party to have standing to enforce a contract, it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." (Citation and punctuation omitted.) *Graham v. Cobb County*, 316 Ga. App. 738, 743 (2) (730 SE2d 439) (2012). The contract in this case provided that as a condition of Masino's employment he may have access to various confidential documents and he agreed not divulge such proprietary information to anyone outside of the chamber. There is nothing in the employment confidentiality agreement between Masino and the chamber to indicate that it was intended for the benefit of Settles Bridge.

5

Furthermore, even if the agreement were relevant, Masino did not violate it by divulging confidential information. Pretermitting the issue of whether this public zoning issue could constitute confidential information, as indicated in Settles Bridge's complaint, before Masino ever contacted the city manager, representatives from both Settles Bridge and Notre Dame had already approached the city regarding the property's zoning classification and development of the school on that property. As the trial court found, the information "had already been communicated to the City by both the plaintiff and non-party Notre Dame prior to the alleged telephone call by Defendant Masino." Thus, Masino's similar statements about the property's zoning simply did not concern any proprietary, confidential matter. Accordingly, Settles Bridges' arguments premised on the confidentiality agreement are without merit.

3. *Privileged statements*.

Settles Bridge contends that the trial court erroneously determined that the statements made by Masino were privileged. We disagree.

The plain language of OCGA § 9-11-11.1 (b) authorizes dismissal of a claim if the statements in question are privileged under paragraph OCGA § 51-5-7 (4). *Atlanta Humane Society*, supra at 454 (1). Pursuant to OCGA § 51-5-7 (4), statements are privileged if they are "made in good faith as part of an act in furtherance of the

right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1." The definition set forth in OCGA § 9-11-11.1 (c) includes statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. "Such protected statements even include those that initiate a proceeding to address matters of public concern. [Cit.]" *Harkins v. Atlanta Humane Society*, 264 Ga. App. 356, 361 (2) (590 SE2d 737) (2003), reversed in part on other grounds, 278 Ga. supra at 456 (2). See also *Hawks v. Hinely*, 252 Ga. App. 510, 513 (1) (a) (556 SE2d 547) (2001) (statements made in application before beginning of recall proceeding included in scope of anti-SLAPP statute).

In this case, Masino's alleged statements to the city manager, concerning a zoning matter that had already been communicated to the city and which allegedly initiated the city's adoption of a moratorium and special permit requirement, constituted statements made in connection with an issue of public interest or concern. See *Metzler v. Rowell*, 248 Ga. App. 596, 599 (1) (547 SE2d 311) (2001) (anti-SLAPP statute applied to letter concerning development and zoning issue);

7

*Providence Const. Co. v. Bauer*, 229 Ga. App. 679, 680 (1) (494 SE2d 527) (1997) (letters to county officials concerning development covered by anti-SLAPP). Compare *Georgia Community Support &c. v. Berryhill*, 275 Ga. App. 189, 192 (1) (620 SE2d 178) (2005) (anti-SLAPP statute did not apply where there was no evidence that any official proceeding was ever involved, "either before or after [the defendant's] statements").

In addition, Settles Bridge has made no showing that Masino did not act in good faith. On the contrary, affidavits in the record show that Masino did not coerce or pressure the city to interfere with Notre Dame's relocation to the property, and instead simply made good faith statements because he was familiar with the property Notre Dame sought to purchase and believed it was zoned for residential development. Accordingly, such good faith statements concerning a matter of public concern, which purportedly led to official zoning decisions, was "privileged as a matter of law, and [the] lawsuit initiated in response to the protected statements [was properly] dismissed." (Citations omitted.) *Harkins v. Atlanta Humane Society*, 273 Ga. App. 489, 491 (618 SE2d 16) (2005).

4. *Request to lift stay and extend discovery under OCGA § 9-11-11.1 (d).*

Settles Bridge contends that the trial court erred in denying its request to lift the automatic stay on all discovery imposed by the anti-Slapp statute and to extend discovery for 60 days. The contention is without merit.

OCGA § 9-11-11.1 (d) provides:

> All discovery and any pending hearings or motions in the action shall be stayed upon the filing of a motion to dismiss or a motion to strike made pursuant to subsection (b) of this Code section. The motion shall be heard not more than 30 days after service unless the emergency matters before the court require a later hearing. The court, on noticed motion and for good cause shown, may order that specified discovery or other hearings or motions be conducted notwithstanding this subsection.

The requirement that the motion to dismiss be heard within 30 days effectuates the anti-SLAPP statute's purpose of providing "an early means of testing the *bona fides* of the plaintiff's claim." *Atlanta Humane Society*, supra, 278 Ga. at 452 (1). "The purpose of the anti-SLAPP statute is to quickly end oppressive and speech-chilling litigation against those who attempt to participate in discussions on matters of public importance." Id. at 457 (Fletcher, C.J., concurring in part and dissenting in part). Although subsection (d) gives the trial court the discretion to order specified discovery for good cause shown, the sole possible reason for such limited discovery "is to obtain evidence for use in resolving a motion to dismiss pursuant to OCGA § 9-11-11.1 (b)." (Citation omitted.) Id. at 453 (1).

9

Settles Bridge has not made a good cause showing that there was other evidence necessary for resolution of the motion to dismiss. It claims that the hearing should have been delayed to allow discovery of Masino's motives for disclosing confidential information that derailed the development. However, it made no showing as to why it could not have already discovered such information and, as discussed above, the very premise of the claim is flawed since Masino did not disclose confidential information. "A trial court has wide discretion to shorten, extend, or reopen the time for discovery, and its decision will not be reversed unless a clear abuse of that discretion is shown." (Citations and punctuation omitted.) *Zywiciel v. Historic Westside Village Partners*, 313 Ga. App. 397, 403 (6) (721 SE2d 617) (2011). Here, the trial court did not abuse its discretion in refusing the request to lift the stay and extend discovery.

*Judgment affirmed. Ellington, C. J., and Phipps, P. J, concur.*